GREEN et al. v. BURNS.

No. 34318.    May 1, 1951.

*230 P. 2d 892.*

Pierce, Rucker, Mock, Tabor & Duncan, Tulsa, for plaintiffs in error.

Ed Chapman, Bristow, and Rosenstein, Fist & Shidler and Leslie Webb, Tulsa, for defendant in error.

DAVISON, J. Pearline Burns brought this action in the superior court of Creek county against the defendants, Paul L. Green, Yellow Transit Company, a corporation, and Massachusetts Bonding & Insurance Company, to recover damages for personal injuries. The trial resulted in a verdict for the plaintiff and against the defendants in the sum of $2,999. The defendants have appealed. The parties will be referred to as they appeared in the trial court.

The plaintiff alleged a collision between the car in which she was riding as a passenger, and a truck owned by defendant Yellow Transit Company, but being driven by Paul L. Green, its servant and employee; that the car in which plaintiff was riding was going in a westerly direction on U. S. Highway No. 66 and met the defendant's truck with a semitrailer which was traveling from the opposite direction; that according to plaintiff's theory of the case defendant's truck was being driven at a high rate of speed and with its bright headlights shining down the highway, and that immediately prior to the time that the car and truck would have ordinarily passed each other, the driver of the truck, suddenly and without warning to the plaintiff or her driver, drove the truck and semitrailer attached thereto across the center of the highway as he was rounding a curve in the highway and that the trailer being pulled by the truck and while on the wrong side of the highway crashed into the car in which plaintiff was riding. Plaintiff further charged that by the negligent operation of defendant's truck, she received the injuries which are the subject of this case.

The defendants' answer denied any negligence on their part, and further defended themselves on the theory that the driver of the car was acting as the agent of the plaintiff and that plaintiff and her driver were negligent in the operation of said car and that their negligence contributed to the accident; that the plaintiff and her driver were under the influence of intoxicating liquor; that they were driving the car at a high rate of speed and failed to keep their car under such control as required by law; that plaintiff's car was being driven on the wrong side of the highway; further, that the collision was an unavoidable casualty.

The defendant Massachusetts Bonding & Insurance Company admitted it was the insurance carrier for the defendant Yellow Transit Company, and confessed that it would be liable for any final judgment rendered against its insured.

Plaintiff's reply denied all of the material defensive allegations contained in defendants' answer.

Plaintiff testified that she was riding in a car owned and driven by Jack

W. Smith at the time of the collision going toward Depew at about 2 a.m.; that plaintiff's car, a 1937 Chevrolet, was traveling about 24 or 30 miles per hour; that defendant's truck and trailer was coming toward them at a speed of 60 or 65 miles per hour with his bright lights burning; that the truck driver kept his bright lights on, although the car driver blinked his three or four times and then kept his dimmers on; that the car was slowed down but the truck and trailer kept coming around a curve and that the truck was coming on the wrong side of the road which was wet and slippery; that Smith had pulled off the highway the best he could without running into a ditch; that when the truck got about 20 feet from the car it cut across in front of the car and the trailer hit the car. Plaintiff was injured and the extent of such injuries will be discussed later.

The testimony of the plaintiff was fully corroborated by the witness, Jack W. Smith.

The evidence on the question of negligence offered on behalf of the defendants was in direct conflict with that of the plaintiff.

The defendant Paul Green testified that he was driving the truck and that the car approached him wobbling and on the wrong side of the highway, and that just before the collision this defendant, in order to keep from hitting the car head on, turned sharply to his left and that the car hit his trailer about four or four and a half feet on the north side of the road; that all of the occupants of the car were drunk and that Smith, the driver of the car, told the highway patrolman that he had been drinking beer, whisky and wine.

Taylor Herman, another witness for defendants, testified that he worked for an automobile wrecker company; that he went to the scene of the accident to get the wrecked car; that the skid marks of the car indicated that the car had gone off the south shoulder of the road and back into the middle of the highway at the time of the collision.

A highway patrolman and a constable testified for defendants that the plaintiff, Smith, and the other passenger appeared to be drunk and that their car smelled with alcohol and that a case of beer, some empty and some open, some with tops off, was behind the front seat of the car and that the truck driver had not been drinking. These officers also testified that the tracks of the car indicated that it was wobbling just before the collision and that it had been on the wrong side of the road; that the collision occurred on the north side of the center of the road. The testimony of these officers was corroborated by several other witnesses.

There were some discrepancies in the testimony of the witnesses for the defendants. Defendant's witness, John Henry, an officer, testified that the car tracks showed that the collision occurred on the south side of the highway. Other witnesses, as above stated, testified that the impact occurred on the north side of the road.

The witness, Smith, denied that he had been drinking, and stated that he did not drink; that he had a case of beer in the trunk of the car which he was taking to his father, at the request of his father who had been sick. This witness stated that he and plaintiff lived in the country about nine miles from Stroud and that they had attended a picture show in Bristow and had stopped at a cafe after the show for some food; that they picked up a friend in the cafe who was going home with them and that this friend had been drinking some.

Erby Smith, the father of Jack W. Smith, testified that he had had a recent operation and had requested his son to bring him the case of beer upon the recommendation of his doctor to drink a bottle occasionally.

Plaintiff denied that she had been drinking and testified that she did not drink. She further testified that the case of beer was locked in the trunk of the car and that her escort, Smith, was taking it home to his father.

The defendants rely on three separate propositions for reversal.

The first proposition is that the court erred in not sustaining defendants' motion for a directed verdict. Under this proposition the defendants argue that all of the testimony, with the exception of the plaintiff and the driver of the car, was in favor of defendants and that physical facts pertaining to the position of the skid marks of plaintiff's car would preclude a recovery by plaintiff, and that the trial court should have disregarded evidence inconsistent with the physical facts and should have directed a verdict.

We cannot agree that the trial court should have instructed a verdict herein. The evidence of the defendants was not in all things consistent and uniform. The jury could have, and evidently did, believe plaintiff and her witness. Negligence is always a question for the jury when reasonable men may differ as to the facts or as to the inferences to be drawn therefrom. Wilson & Co., Inc., v. Campbell, 195 Okla. 323, 157 P. 2d 465; Southern Kansas Greyhound Lines, Inc., v. Hicks, 184 Okla. 581, 89 P. 2d 278. From the facts herein pertaining to the question of primary negligence, it is readily apparent that reasonable men might differ as to the existence of negligence on the part of defendant.

Defendants' second proposition is that the court erred in not sustaining their motion for a new trial. In their argument under this proposition they combine the first part of their argument with their first proposition. We think it needless to comment further on this question. Under this proposition it is also argued that a new trial should have been granted on the grounds of newly discovered evidence. As a part of

the motion on this ground the defendants attached their Exhibit 1, which consisted of a number of affidavits stating therein that the affiants had, on different occasions, seen both the plaintiff and Smith drink beer or whisky.

Under this assignment, defendants state that they recognize the rule that a court will not grant a new trial on the grounds of newly discovered evidence if such newly discovered evidence is only contradictory or cumulative in nature, but they argue that they were taken by surprise in that they had "no idea that the plaintiff and her driver would deny that they were drinking on the occasion in question. . . and that they never drank at all."

We are of the opinion that the trial court did not commit error in its ruling on this particular phase of the case. The defendants had made an issue of plaintiff and Smith having been intoxicated at the time of the accident. The defendants by their answer stated:

"That the plaintiff and the driver of her vehicle were under the influence of intoxicating liquor such their minds were not free and clear, they could not control their actions, all in violation of the laws of the State of Oklahoma."

The reply of the plaintiff to defendants' answer states:

"Plaintiff specifically denies that she, or the driver of said automobile in which she was riding were under the influence of intoxicating liquor."

In view of the pleadings and the number of witnesses used by defendants in the trial of the case who testified as to both plaintiff and her escort being intoxicated, we are unable to say that the case should be reversed on this point.

Other testimony offered in the above mentioned exhibit would have been cumulative.

The last proposition relied on by defendants is that the judgment is exces-

sive in "absence of evidence of permanent disability."

Dr. Sisler testified that he saw plaintiff about 9 o'clock the morning of the accident; that she was an emergency patient; that when he saw her, she was unconscious, vomiting and suffering from bruises and abrasions on her body; that she had a severe contusion on the left side of the head that was sufficiently violent to fracture the left cheek bone; that the blow also caused a brain concussion; that she had three or four teeth slightly chipped; that he took an X-ray picture of her the morning of the trial and that it revealed a fracture of the left cheek bone and evidently a nerve injury; that she had anesthesia over the distribution of the area below the eye and upper lip, and part of the cheek and side of the nose; that in his opinion the nerve injury may possibly leave and at some time return; that the fracture is three-quarters of an inch or an inch.

The plaintiff testified that she has been able to work but very little since the injury, due to her extreme nervousness, and that every time she stoops her head starts hurting.

We cannot say that the verdict of $2,999 was excessive, or that the amount awarded clearly shows that the jury was actuated by passion, partiality, prejudice or corruption. See Public Service Co. of Oklahoma v. Hawkins, 194 Okla. 272. 149 P. 2d 783; Denco Bus Lines, Inc., v. Hargis, 204 Okla. 339, 229 P. 2d 560; Oklahoma Railway Co. v. Kelley, 204 Okla. 268, 229 P. 2d 182.

Judgment affirmed.

ARNOLD, C.J., and WELCH, CORN, GIBSON, HALLEY, and JOHNSON, JJ., concur. O'NEAL, J., dissents.